MICHAEL FAILLACE & ASSOCIATES, P.C.
60 East 42nd Street, Suite 4510
New York, New York 10165

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------X
MIGUEL LOPEZ MONTES, GERARDO
CARRETERO GERARDO CARRETERO AND
VALENTIN VIVAR CRUZ, *individually and on*
*behalf of others similarly situated,*

<em>Plaintiffs</em>,

-against-

11 HANOVER GROUP LLC. (d/b/a 11 HANOVER
GREEK), 11 HANOVER SQUARE CORP. (d/b/a 11
HANOVER GREEK), DG HANOVER 11, LLC.
(d/b/a 11 HANOVER GREEK), LIBERATOS
BROTHERS, LLC (d/b/a 11 HANOVER GREEK),
GERASIMOS LIBERATOS (a.k.a. MIKEY),
ARISTOMENIS MIHALATOS, CHRISTOS
LIBERATOS, PANAGIOTI LIBERATOS (a.k.a.
PETER), and FOTIOS LIBERATOS,

<em>Defendants.</em>

--------------------------------------------------------X

**COMPLAINT**

**COLLECTIVE ACTION**
**UNDER 29 U.S.C. § 216(b)**

**ECF Case**

Plaintiffs Miguel Lopez Montes, Gerardo Carretero and Valentin Vivar Cruz, individually and on behalf of others similarly situated (collectively, "Plaintiffs"), by and through their attorneys, Michael Faillace & Associates, P.C., upon their knowledge and belief, and as against 11 Hanover Group LLC. (d/b/a 11 Hanover Greek), 11 Hanover Square Corp. (d/b/a 11 Hanover Greek), DG Hanover 11, LLC. (d/b/a 11 Hanover Greek), Liberatos Brothers, LLC (d/b/a 11 Hanover Greek) ("Defendant Corporations"), Gerasimos Liberatos (a.k.a. Mikey), Aristomenis Mihalatos, Christos Liberatos, Panagioti Liberatos (a.k.a. Peter), and Fotios Liberatos ("Individual Defendants"), (collectively, "Defendants"), allege as follows.

## NATURE OF THE ACTION

1.      Plaintiffs are former employees of defendants 11 Hanover Group LLC. (d/b/a 11 Hanover Greek), 11 Hanover Square Corp. (d/b/a 11 Hanover Greek), DG Hanover 11, LLC (d/b/a 11 Hanover Greek), Liberatos Brothers, LLC (d/b/a 11 Hanover Greek), Gerasimos Liberatos (a.k.a. Mikey), Aristomenis Mihalatos, Christos Liberatos, Panagioti Liberatos (a.k.a. Peter), and Fotios Liberatos.

2.      Defendants own, operate, or control a Mediterranean restaurant located at 11 Hanover Square, New York, New York 10005 under the name 11 Hanover Greek.

3.      Upon information and belief, Individual Defendants Gerasimos Liberatos (a.k.a. Mikey), Aristomenis Mihalatos, Christos Liberatos, Panagioti Liberatos (a.k.a. Peter), and Fotios Liberatos, serve or served as owners, managers, principals, or agents of Defendant Corporations and, through these corporate entities, operate or operated the restaurant as a joint or unified enterprise.

4.      Plaintiffs were employed as a food preparer and ostensibly as food runners.

5.      However, the food runners were required to spend a considerable part of their work day performing non-tipped, non-delivery duties, including but not limited to various restaurant duties such as accommodating the deliveries, sweeping and mopping, unclogging and repairing the drain and sink, bringing down baskets, dishwashing, bringing down dirty dishes, cleaning the refrigerators, stocking the liquor deliveries, deconstructing boxes and tying them up, throwing out the garbage, replacing light bulbs, doing general restaurant maintenance, helping the cooks, preparing cakes, cutting bread, lemons, tomatoes, lettuce, and other vegetables, refilling the refrigerator with drinks, including beer, wine, bringing food up and down, cleaning lamps and windows (hereafter the "non-tipped, non-delivery duties").

6.      At all times relevant to this Complaint, Plaintiffs worked for Defendants in excess of 40 hours per week, without appropriate minimum wage or overtime compensation for the hours that they worked.

7.      Rather, Defendants failed to maintain accurate recordkeeping of the hours worked, failed to pay Plaintiffs appropriately for any hours worked, either at the straight rate of pay or for any additional overtime premium.

8.      Further, Defendants failed to pay Plaintiffs the required "spread of hours" pay for any day in which they had to work over 10 hours a day.

9.      Defendants employed and accounted for Plaintiffs Lopez and Vivar as food runners in their payroll, but in actuality these Plaintiffs' duties required a significant amount of time spent in non-tipped, non-delivery duties.

10.      Regardless, at all relevant times, Defendants paid Plaintiffs Lopez and Vivar at a rate that was lower than the required tip-credit rate.

11.      In addition, under state law, Defendants were not entitled to take a tip credit because these Plaintiffs' non-tipped duties exceeded 20% of each workday, or 2 hours per day, whichever is less in each day.  12 N.Y. C.R.R. §146.

12.      Upon information and belief, Defendants employed the policy and practice of disguising these Plaintiffs' actual duties in payroll records by designating them as food runners instead of non-tipped employees. This allowed Defendants to avoid paying these Plaintiffs at the minimum wage rate and enabled them to pay them at the lower tip-credited rate (which they still failed to do).

13.      Defendants' conduct extended beyond Plaintiffs to all other similarly situated employees.

14.     At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs and other employees to work in excess of forty (40) hours per week without providing the minimum wage and overtime compensation required by federal and state law and regulations.

15.     Plaintiffs now bring this action on behalf of themselves, and other similarly situated individuals, for unpaid minimum and overtime wages pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq.* ("FLSA"), and for violations of the N.Y. Labor Law §§ 190 *et seq.* and 650 *et seq.* (the "NYLL"), and the "spread of hours" and overtime wage orders of the New York Commissioner of Labor codified at N.Y. COMP. CODES R. & REGS. tit. 12, § 146-1.6 (herein the "Spread of Hours Wage Order"), including applicable liquidated damages, interest, attorneys' fees and costs.

16.     Plaintiffs seek certification of this action as a collective action on behalf of themselves individually and all other similarly situated employees and former employees of Defendants pursuant to 29 U.S.C. § 216(b).

## JURISDICTION AND VENUE

17.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question) and the FLSA, and supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367(a).

18.     Venue is proper in this district under 28 U.S.C. § 1391(b) and (c) because all, or a substantial portion of, the events or omissions giving rise to the claims occurred in this district, Defendants maintain their corporate headquarters and offices within this district, and Defendants operate a restaurant located in this district. Further, Plaintiffs were employed by Defendants in this district.

## THE PARTIES

### *Plaintiffs*

19.     Plaintiff Miguel Lopez ("Plaintiff Lopez" or "Mr. Lopez") is an adult individual residing in Bronx County, New York.  Plaintiff Lopez was employed by Defendants at 11 Hanover Greek from approximately October 2016 until on or about October 2017.

20.     Plaintiff Gerardo Carretero ("Plaintiff Carretero" or "Mr. Carretero") is an adult individual residing in Queens County, New York.  Plaintiff Carretero was employed by Defendants at 11 Hanover Greek from approximately October 2016 until on or about October 27, 2017.

21.     Plaintiff Valentin Vivar Cruz ("Plaintiff Vivar" or "Mr. Vivar") is an adult individual residing in Bronx County, New York.  Plaintiff Vivar was employed by Defendants at 11 Hanover Greek from approximately October 2016 until on or about October 20, 2017.

### *Defendants*

22.     At all relevant times, Defendants owned, operated, or controlled a Mediterranean restaurant located at 11 Hanover Square, New York, New York 10005 under the name "11 Hanover Greek".

23.     Upon information and belief, 11 Hanover Group LLC. (d/b/a 11 Hanover Greek) is a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business at  11 Hanover Square, New York, New York 10005

24.     Upon information and belief, 11 Hanover Square Corp. (d/b/a 11 Hanover Greek) is a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintained its principal place of business at 11 Hanover Square, New York, New York 10005.

25.    Upon information and belief, DG Hanover 11, LLC. (d/b/a 11 Hanover Greek) is a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintained its principal place of business at 11 Hanover Square, New York, New York 10005.

26.    Upon information and belief, Liberatos Brothers, LLC (d/b/a 11 Hanover Greek) is a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintained its principal place of business at 11 Hanover Square, New York, New York 10005.

27.    Defendant Gerasimos Liberatos (a.k.a. Mikey) is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Gerasimos Liberatos (a.k.a. Mikey) is sued individually in his capacity as owner, officer and/or agent of the Defendant Corporations.

28.    Defendant Gerasimos Liberatos (a.k.a. Mikey) possesses operational control over Defendant Corporations, an ownership interest in Defendant Corporations, and controls significant functions of Defendant Corporations.

29.    Defendant Gerasimos Liberatos (a.k.a. Mikey) determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

30.    Defendant Aristomenis Mihalatos is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Aristomenis Mihalatos is sued individually in his capacity as owner, officer and/or agent of the Defendant Corporations.

31.     Defendant Aristomenis Mihalatos possesses operational control over Defendant Corporations, an ownership interest in Defendant Corporations, or controls significant functions of Defendant Corporations.

32.      Defendant Aristomenis Mihalatos determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

33.     Defendant Christos Liberatos is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period.  Defendant Christos Liberatos is sued individually in his capacity as owner, officer and/or agent of the Defendant Corporations.

34.     Defendant Christos Liberatos possesses operational control over Defendant Corporations, an ownership interest in Defendant Corporations, or controls significant functions of Defendant Corporations.

35.     Defendant Christos Liberatos determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

36.     Defendant Panagioti Liberatos (a.k.a. Peter) is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period.  Defendant Panagioti Liberatos (a.k.a. Peter) is sued individually in his capacity as owner, officer and/or agent of the Defendant Corporations.

37.     Defendant Panagioti Liberatos (a.k.a. Peter) possesses operational control over Defendant Corporations, an ownership interest in Defendant Corporations, or controls significant functions of Defendant Corporations.

38.     Defendant Panagioti Liberatos (a.k.a. Peter) determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

39.     Defendant Fotios Liberatos is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period.  Defendant Fotios Liberatos is sued individually in his capacity as owner, officer and/or agent of the Defendant Corporations.

40.      Defendant Fotios Liberatos possesses operational control over Defendant Corporations, an ownership interest in Defendant Corporations, or controls significant functions of Defendant Corporations.

41.     Defendant Fotios Liberatos determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

## FACTUAL ALLEGATIONS

### *Defendants Constitute Joint Employers*

42.     Defendants operate a Mediterranean restaurant located in the Financial District section of Manhattan in New York City.

43.     The individual defendants, Gerasimos Liberatos (a.k.a. Mikey), Aristomenis Mihalatos, Christos Liberatos, Panagioti Liberatos (a.k.a. Peter), and Fotios Liberatos, possess operational control over Defendant Corporations, possess ownership interests in Defendant Corporations, and control significant functions of Defendant Corporations.

44.     Defendants are associated and joint employers, act in the interest of each other with respect to employees, pay employees by the same method, and share control over the employees.

45.     Each Defendant possessed substantial control over Plaintiffs' (and other similarly situated employees') working conditions, and over the policies and practices with respect to the employment and compensation of Plaintiffs, and all similarly situated individuals, referred to herein.

46.     Defendants jointly employed Plaintiffs (and all similarly situated employees) and are Plaintiffs' (and all similarly situated employees') employers within the meaning of 29 U.S.C. 201 *et seq.* and the NYLL.

47.     In the alternative, Defendants constitute a single employer of Plaintiffs and/or similarly situated individuals.

48.     Upon information and belief, individual defendants Gerasimos Liberatos (a.k.a. Mikey),  Aristomenis Mihalatos, Christos Liberatos, Panagioti Liberatos (a.k.a. Peter), and Fotios Liberatos, operated Defendant Corporations as either alter egos of themselves and/or failed to operate Defendant Corporations as entities legally separate and apart from themselves, by among other things:

    a) failing to adhere to the corporate formalities necessary to operate Defendant Corporations as Corporations,

    b) defectively forming or maintaining the corporate entities of Defendant Corporations, by, amongst other things, failing to hold annual meetings or maintaining appropriate corporate records,

    c) transferring assets and debts freely as between all Defendants,

    d) operating Defendant Corporations for their own benefit as the sole or majority shareholders,

e)  operating Defendant Corporations for their own benefit and maintaining control over these corporations as closed Corporations,

f)  intermingling assets and debts of their own with Defendant Corporations,

g)  diminishing and/or transferring assets of Defendant Corporations to avoid full liability as necessary to protect their own interests, and

h)  Other actions evincing a failure to adhere to the corporate form.

49.   At all relevant times, Defendants were Plaintiffs' employers within the meaning of the FLSA and New York Labor Law. Defendants had the power to hire and fire Plaintiffs, controlled the terms and conditions of employment, and determined the rate and method of any compensation in exchange for Plaintiffs' services.

50.   In each year, from 2016 to 2017, Defendants, both separately and jointly, had a gross annual volume of sales of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

51.   In addition, upon information and belief, Defendants and/or their enterprise were directly engaged in interstate commerce. As an example, numerous items that were used in the restaurant on a daily basis are goods produced outside of the State of New York.

*Individual Plaintiffs*

52.   Plaintiffs are former employees of Defendants who were employed as a food preparer and ostensibly as food runners. However, the food runner spent a considerable amount of time performing the non-tipped, non-delivery duties described above.

53.   Plaintiffs seek to represent a class of similarly situated individuals under 29 U.S.C. 216(b).

*Plaintiff Miguel Lopez Montes*

54.     Plaintiff Lopez was employed by Defendants from approximately October 10, 2016 until on or about October 20, 2017.

55.     Defendants ostensibly employed Plaintiff Lopez as a food runner.

56.     However, Plaintiff Lopez also was required to spend a significant portion of his work day performing the non-tipped, non-delivery duties described above.

57.     Although Plaintiff Lopez ostensibly was employed as a food runner, he spent over 20% of each day performing non-delivery work throughout his employment with Defendants.

58.     Plaintiff Lopez regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

59.     Plaintiff Lopez's work duties required neither discretion nor independent judgment.

60.     Throughout his employment with Defendants, Plaintiff Lopez regularly worked in excess of 40 hours per week.

61.     From approximately October 10, 2016 until on or about July 2017, Plaintiff Lopez worked from approximately 11:00 a.m. until on or about 12:00 a.m. Mondays through Saturdays (typically 78 hours per week).

62.     From approximately July 2017 until on or about October 2017, Plaintiff Lopez worked from approximately 11:00 a.m. until on or about 12:00 a.m. Wednesdays through Saturdays (typically 52 hours per week).

63.     Throughout his employment, defendants paid Plaintiff Lopez his wages by check.

64.     For the month of October 2016, defendants paid Plaintiff Lopez $9.00 per hour.

65.     From approximately November 2016 until on or about October 2017, defendants paid Plaintiff Lopez $7.50 per hour.

66.     Plaintiff Lopez's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

67.     For example, Defendants required Plaintiff Lopez to work an additional hour past his scheduled departure time every day, and did not pay him for the additional time he worked.

68.     Throughout his entire employment, defendants granted Plaintiff Lopez a constantly interrupted meal break of approximately 30 minutes.

69.     Nevertheless, Defendants deducted approximately $20 from Plaintiff Lopez's weekly paycheck for meals he never ate.

70.     Plaintiff Lopez was never notified by Defendants that his tips were being included as an offset for wages.

71.     Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Lopez's wages.

72.     In addition, throughout his entire employment, Defendants withheld all of Plaintiff Lopez's cash tips and delivery tips. Plaintiff Lopez calculates he lost approximately $100 per day of tips withheld.

73.     Prior to approximately March 2017, Plaintiff Lopez was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device, such as sign in sheets or punch cards, that accurately reflected his actual hours worked.

74.     From approximately August 2017 until on or about October 2017, defendants required Plaintiff Lopez to sign a document, the contents of which he was not allowed to review in detail, in order to release his weekly pay.

75.     No notification, either in the form of posted notices or other means, was ever given to Plaintiff Lopez regarding overtime and wages under the FLSA and NYLL.

76.     Defendants did not provide Plaintiff Lopez an accurate statement of wages, as required by NYLL 195(3).

77.     Defendants did not give any notice to Plaintiff Lopez, in English and in Spanish (Plaintiff Lopez's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

78.     Defendants required Plaintiff Lopez to purchase "tools of the trade" with his own funds—including six shirts, four pairs of pants, four pairs of shoes, and three ties.

### Plaintiff Jose Gerardo Carretero Gutierrez

79.     Plaintiff Carretero was employed by Defendants at 11 Hanover Greek from approximately October 2016 until on or about October 27, 2017.

80.     Defendants employed Plaintiff Carretero as a food preparer.

81.     Plaintiff Carretero regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

82.     Plaintiff Carretero's work duties required neither discretion nor independent judgment.

83.     Throughout his employment with Defendants, Plaintiff Carretero regularly worked in excess of 40 hours per week.

84.     From approximately October 2016 until on or about October 27, 2017, Plaintiff Carretero worked at 11 Hanover Greek from approximately 8:30 a.m. until on or about 8:00 p.m. two days a week and from approximately 9:00 a.m. until on or about 8:00 p.m. three to four days a week (typically 56 to 67 hours per week).

85.     At all relevant times, Plaintiff Carretero was paid his wages by personal checks.

86.     Throughout his entire employment, defendants paid Plaintiff Carretero a fixed

salary of $850 per week.

87. However, if Plaintiff Carretero worked five days a week, then Defendants paid him a fixed salary of $708 per week.

88. Plaintiff Carretero's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

89. For example, Defendants required Plaintiff Carretero to start working 15 to 30 minutes prior to his scheduled start time two days a week, and did not pay him for the additional time he worked.

90. Defendants granted Plaintiff Carretero a constantly interrupted meal break of approximately 30 minutes.

91. Nevertheless, Defendants deducted $20 from Plaintiff Carretero's weekly paycheck for meals he never ate.

92. Although Plaintiff Carretero was required to keep track of his time, defendants required Plaintiff Carretero to sign a document, the contents of which he was not allowed to review in detail, in order to release his weekly pay.

93. No notification, either in the form of posted notices or other means, was ever given to Plaintiff Carretero regarding overtime and wages under the FLSA and NYLL.

94. Defendants did not provide Plaintiff Carretero an accurate statement of wages, as required by NYLL 195(3).

95. Defendants did not give any notice to Plaintiff Carretero, in English and in Spanish (Plaintiff Carretero's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

96. Defendants required Plaintiff Carretero to purchase "tools of the trade" with his

own funds—including eight pairs of pants and seven pairs of shoes.

*Plaintiff Valentin Vivar Cruz*

97.     Plaintiff Vivar was employed by Defendants at 11 Hanover Greek from approximately October 1, 2016 until on or about October 20, 2017.

98.     Defendants employed Plaintiff Vivar as a food runner.

99.     However, Plaintiff Vivar also was required to spend a significant portion of his work day performing the non-tipped, non-delivery duties described above.

100.    Although Plaintiff Vivar ostensibly was employed as a food runner, he spent over 20% of each day performing non-tip work throughout his employment with Defendants.

101.    Plaintiff Vivar regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

102.    Plaintiff Vivar's work duties required neither discretion nor independent judgment.

103.    Throughout his employment with Defendants, Plaintiff Vivar regularly worked in excess of 40 hours per week.

104.    From approximately October 1, 2016 until on or about October 9, 2016, Plaintiff Vivar worked at 11 Hanover Greek for 47 hours.

105.    From approximately October 10, 2016 until on or about November 2016, Plaintiff Vivar worked at 11 Hanover Greek from approximately 10:30 a.m. until on or about 11:00 p.m. Mondays through Fridays and from approximately 3:00 p.m. until on or about 11:00 p.m. on Saturdays (typically 70.5 hours per week).

106.    From approximately November 2016 until on or about June 2017, Plaintiff Vivar worked from approximately 10:30 a.m. until on or about 12:00 a.m. Mondays through Thursdays and from approximately 3:00 p.m. until on or about 12:00 a.m. on Saturdays (typically 63 hours

per week).

107.     From approximately June 2017 until on or about September 2017, Plaintiff Vivar worked from approximately 11:00 a.m. until on or about 11:30 p.m. to 12:00 a.m. Mondays and Wednesdays and from approximately 3:00 p.m. until on or about 11:30 p.m. or 12:00 a.m. on Saturdays (typically 46 to 48 hours per week).

108.     From approximately September 2017 until on or about October 2017, Plaintiff Vivar worked from approximately 11:00 a.m. until on or about 11:30 p.m. Tuesdays, Wednesdays, and Thursdays, from approximately 11:00 a.m. until on or about 4:00 p.m. on Fridays, and from approximately 3:00 p.m. until on or about 11:30 p.m. on Saturdays (typically 51 hours per week).

109.     At all relevant times, Plaintiff Vivar was paid his wages by check.

110.     From approximately October 1, 2016 until on or about October 9, 2016, Plaintiff Vivar was paid his wages in a combination of personal checks and cash.

111.     For the month of October 2016, defendants paid Plaintiff Vivar $10.00 per hour.

112.     For the month of November 2016, Defendants paid Plaintiff Vivar $9.00 per hour.

113.     From approximately December 2016 until on or about August 2017, Defendants paid Plaintiff Vivar $7.50 per regular or overtime hour.

114.     From approximately September 2017 until on or about October 2017, defendants paid Plaintiff Vivar $7.50 per regular hour and $11 per overtime hour.

115.     Plaintiff Vivar's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

116.     For example, Defendants required Plaintiff Vivar to work an additional 30 minutes to one hour past his scheduled departure time every day, and did not pay him for the additional time he worked.

117.    Defendants granted Plaintiff Vivar a constantly interrupted meal break of approximately 30 minutes.

118.    Nevertheless, Defendants deducted $20 from Plaintiff Vivar's weekly paycheck for meals he never ate.

119.    Plaintiff Vivar was never notified by Defendants that his tips were being included as an offset for wages.

120.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Vivar's wages.

121.    In addition, throughout his entire employment, Defendants withheld all of Plaintiff Vivar's cash tips and delivery tips. Plaintiff Vivar calculates he lost approximately $100 per day of tips withheld.

122.    Prior to approximately March 2017, Plaintiff Vivar was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device, such as sign in sheets or punch cards, that accurately reflected his actual hours worked.

123.    From approximately August 2017 until on or about October 2017, defendants required Plaintiff Vivar to sign a document, the contents of which he was not allowed to review in detail, in order to release his weekly pay.

124.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Vivar regarding overtime and wages under the FLSA and NYLL.

125.    Defendants did not provide Plaintiff Vivar an accurate statement of wages, as required by NYLL 195(3).

126.    Defendants did not give any notice to Plaintiff Vivar, in English and in Spanish (Plaintiff Vivar's primary language), of his rate of pay, employer's regular pay day, and such other

information as required by NYLL §195(1).

127.    Defendants required Plaintiff Vivar to purchase "tools of the trade" with his own funds—including five shirts and three pairs of pants.

*Defendants' General Employment Practices*

128.    At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs (and all similarly situated employees) to work in excess of 40 hours a week without paying them appropriate minimum wage, spread of hours pay and overtime compensation as required by federal and state laws.

129.    Plaintiffs were victims of Defendants' common policy and practices which violate their rights under the FLSA and New York Labor Law by, *inter alia*, not paying them the wages they were owed for the hours they worked.

130.    Defendants' pay practices resulted in Plaintiffs not receiving payment for all their hours worked,which caused Plaintiffs' effective rate of pay to fall below the required minimum wage rate.

131.    Defendants habitually required Plaintiffs to work additional hours beyond their regular shifts but did not provide them with any additional compensation.

132.    Defendants required all food runners, including Plaintiffs Lopez and Vivar, to perform general non-delivery, non-tipped restaurant tasks in addition to their primary duties as food runners.

133.    Plaintiffs Lopez and Vivar, and all similarly situated employees, ostensibly were employed as tipped employees by Defendants, although their actual duties included a significant amount of time spent performing non-delivery, non-tipped duties.

134.    Plaintiffs Lopez and Vivar, and all other food runners, were paid at a rate that was

lower than the lower tip-credit rate by Defendants. However, under state law, Defendants were not entitled to a tip credit because the food runner's and Plaintiff Lopez and Vivar's non-tipped duties exceeded 20% of each workday (or 2 hours a day, whichever is less) (12 N.Y.C.R.R. § 146).

135.    New York State regulations provide that an employee cannot be classified as a tipped employee on any day in which he has been assigned to work in an occupation in which tips are not customarily received. (12 N.Y.C.R.R. §§137-3.3 and 137-3.4). Similarly, under federal regulation 29 C.F.R. §531.56(e), an employer may not take a tip credit for any employee time if that time is devoted to a non-tipped occupation.

136.    The food runners', including Plaintiffs Lopez and Vivar's duties were not incidental to their occupation as food runners, but instead constituted entirely unrelated general restaurant work with duties, including the non-tipped duties described above.

137.    In violation of federal and state law as codified above, Defendants classified Plaintiffs Lopez and Vivar and other food runners as tipped employees, and paid them at a rate that was lower than the tip-credit rate when they should have classified them as non-tipped employees and paid them at the minimum wage rate.

138.    Defendants failed to inform Plaintiffs who received tips that Defendants intended to take a deduction against Plaintiffs' earned wages for tip income, as required by the NYLL before any deduction may be taken.

139.    Defendants failed to inform Plaintiffs that their tips were being credited towards the payment of the minimum wage.

140.    Defendants failed to maintain a record of tips earned by Plaintiffs Lopez and Vivar for the deliveries they made to customers.

141.    As part of its regular business practice, Defendants intentionally, willfully, and

repeatedly harmed Plaintiffs Lopez and Vivar by engaging in a pattern, practice, and/or policy of violating the FLSA and the NYLL. This policy and pattern or practice included depriving Plaintiff Lopez and Vivar of a portion of the tips earned during the course of employment.

142.    Defendants unlawfully misappropriated charges purported to be gratuities received by Plaintiffs Lopez and Vivar, and other tipped employees, in violation of New York Labor Law § 196-d (2007).

143.    Under the FLSA and NYLL, in order to be eligible for a "tip credit," employers of tipped employees must either allow employees to keep all the tips that they receive, or forgo the tip credit and pay them the full hourly minimum wage.

144.    Prior to March 2017, defendants willfully disregarded and purposefully evaded recordkeeping requirements of the Fair Labor Standards Act and New York Labor Law by failing to maintain accurate and complete timesheets and payroll records of the hours worked by Plaintiffs Lopez and Vivar.

145.    In addition, from approximately August 2017 until on or about October 2017, defendants required Plaintiffs to sign a document, the contents of which they were not allowed to review in detail, in order to get their weekly paycheck.

146.    Defendants failed to post at the workplace, or otherwise provide to employees, the required postings or notices to employees regarding the applicable wage and hour requirements of the FLSA and NYLL.

147.    Upon information and belief, these practices by Defendants were done willfully to disguise the actual number of hours Plaintiffs (and similarly situated individuals) worked, and to avoid paying Plaintiffs properly for their full hours worked.

148.    Defendants engaged in their unlawful conduct pursuant to a corporate policy of

minimizing labor costs and denying employees compensation by knowingly violating the FLSA and NYLL.

149.    Defendants' unlawful conduct was intentional, willful, in bad faith, and caused significant damages to Plaintiffs and other similarly situated former workers.

150.    Defendants failed to provide Plaintiffs and other employees with accurate wage statements at the time of their payment of wages, containing: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL §195(3).

151.    Defendants failed to provide Plaintiffs and other employees, at the time of hiring and on or before February 1 of each subsequent year, a statement in English and the employees' primary language, containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by New York Labor Law §195(1).

## FLSA COLLECTIVE ACTION CLAIMS

152.    Plaintiffs bring their FLSA minimum wage, overtime, and liquidated damages

claims as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all similarly situated persons who are or were employed by Defendants on or after the date that is three years before the filing of this Complaint (the "FLSA Class Period"), as employees of Defendants (the "FLSA Class").

153.    At all relevant times, Plaintiffs, and other members of the FLSA Class who are and/or have been similarly situated, have had substantially similar job requirements and pay provisions.

154.    At all relevant times, Plaintiffs, and other members of the FLSA Class who are and/or have been similarly situated, have been subject to Defendants' common practices, policies, programs, procedures, protocols and plans of willfully failing and refusing to pay them minimum wage, overtime at a one and one-half times their regular rates for work in excess of forty (40) hours per workweek and willfully failing to keep records required by the FLSA.

155.    The claims of Plaintiffs stated herein are similar to those of the other employees.

### FIRST CAUSE OF ACTION
### VIOLATION OF THE MINIMUM WAGE PROVISIONS OF THE FLSA

156.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

157.    At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d).  Defendants had the power to hire and fire Plaintiffs, controlled the terms and conditions of employment, and determined the rate and method of any compensation in exchange for their employment.

158.    At all times relevant to this action, Defendants were engaged in commerce or in an industry or activity affecting commerce.

159.    Defendants constitute an enterprise within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203 (r-s).

160.    In violation of 29 U.S.C. § 206(a), Defendants failed to pay Plaintiffs (and the FLSA Class members) at the applicable minimum hourly rate.

161.    Defendants' failure to pay Plaintiffs (and the FLSA Class members) at the applicable minimum hourly rate was willful within the meaning of 29 U.S.C. § 255(a).

162.    Plaintiffs (and the FLSA Class members) were damaged in an amount to be determined at trial.

## SECOND CAUSE OF ACTION
## VIOLATION OF THE OVERTIME PROVISIONS OF THE FLSA

163.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

164.    Defendants, in violation of 29 U.S.C. § 207(a)(1), failed to pay Plaintiffs (and the FLSA Class members) overtime compensation at a rate of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

165.    Defendants' failure to pay Plaintiffs, and the putative FLSA Class members, overtime compensation was willful within the meaning of 29 U.S.C. § 255(a).

166.    Plaintiffs (and the FLSA Class members) were damaged in an amount to be determined at trial.

## THIRD CAUSE OF ACTION
## VIOLATION OF THE NEW YORK MINIMUM WAGE ACT

167.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

168.    At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.  Defendants had the power to hire and fire Plaintiffs, controlled their terms and conditions of employment, and determined the rates and methods of any compensation in exchange for their employment.

169.    Defendants, in violation of NYLL § 652(1) and the supporting regulations of the New York State Department of Labor, paid Plaintiffs less than the minimum wage.

170.    Defendants' failure to pay Plaintiffs the minimum wage was willful within the meaning of N.Y. Lab. Law § 663.

171.    Plaintiffs were damaged in an amount to be determined at trial.

**FOURTH CAUSE OF ACTION**
**VIOLATION OF THE OVERTIME PROVISIONS**
**OF THE NEW YORK STATE LABOR LAW**

172.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

173.    Defendants, in violation of N.Y. Lab. Law § 190 *et seq*., and supporting regulations of the New York State Department of Labor, failed to pay Plaintiffs overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

174.    Defendants' failure to pay Plaintiffs overtime compensation was willful within the meaning of N.Y. Lab. Law § 663.

175.    Plaintiffs were damaged in an amount to be determined at trial.

**FIFTH CAUSE OF ACTION**
**VIOLATION OF THE SPREAD OF HOURS WAGE ORDER**
**OF THE NEW YORK COMMISSIONER OF LABOR**

176.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

177.    Defendants failed to pay Plaintiffs one additional hour's pay at the basic minimum wage rate before allowances for each day Plaintiffs' spread of hours exceeded ten hours in violation of NYLL §§ 650 *et seq*. and 12 N.Y.C.R.R. §§ 146-1.6.

178.    Defendants' failure to pay Plaintiffs an additional hour's pay for each day Plaintiffs' spread of hours exceeded ten hours was willful within the meaning of NYLL § 663.

179.    Plaintiffs were damaged in an amount to be determined at trial.

**SIXTH CAUSE OF ACTION**
**VIOLATION OF THE NOTICE AND RECORDKEEPING REQUIREMENTS**

**OF THE NEW YORK LABOR LAW**

180.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

181.     Defendants failed to provide Plaintiffs with a written notice, in English and in Spanish (Plaintiffs' primary language), containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by NYLL §195(1).

182.     Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

**SEVENTH CAUSE OF ACTION**
**VIOLATION OF THE WAGE STATEMENT PROVISIONS**
**OF THE NEW YORK LABOR LAW**

183.     Plaintiffs repeat and reallege all paragraphs above as though set forth fully herein.

184.     With each payment of wages, Defendants failed to provide Plaintiffs with an accurate statement listing each the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL 195(3).

185.     Defendants are liable to each Plaintiff in the amount of $5,000, together with costs

and attorneys' fees.

## EIGHTH CAUSE OF ACTION
## UNLAWFUL DEDUCTIONS FROM TIPS IN VIOLATION
## OF THE NEW YORK LABOR LAW

186.    Plaintiffs Lopez and Vivar repeat and reallege all paragraphs above as though set forth fully herein.

187.    At all relevant times, Defendants were Plaintiffs Lopez's and Vivar's employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.

188.    New York State Labor Law § 196-d prohibits any employer or his agents, including owners and managers, from demanding or accepting, directly or indirectly, any part of the gratuities received by an employee, or retaining any part of a gratuity, or any charge purported to be a gratuity, for an employee.

189.    Defendants unlawfully misappropriated a portion of Plaintiffs Lopez's and Vivar's tips that were received from customers.

190.    Defendants knowingly and intentionally retained a portion of Plaintiffs Lopez's and Vivar's tips in violations of the NYLL and supporting Department of Labor Regulations.

191.    Plaintiffs Lopez and Vivar were damaged in an amount to be determined at trial.

## NINTH CAUSE OF ACTION
## RECOVERY OF EQUIPMENT COSTS

192.    Plaintiffs repeat and reallege all paragraphs above as though set forth fully herein.

193.    Defendants required Plaintiffs to pay, without reimbursement, the costs and expenses for purchasing and maintaining equipment and "tools of the trade" required to perform their jobs, such as pants, shoes and shirts, further reducing their wages in violation of the FLSA and NYLL.  29 U.S.C.  § 206(a); 29 C.F.R. § 531.35; N.Y. Lab. Law §§ 193 and 198-b.

194.    Plaintiffs were damaged in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendants by:

(a)     Designating this action as a collective action and authorizing prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all putative class members apprising them of the pendency of this action, and permitting them to promptly file consents to be Plaintiffs in the FLSA claims in this action;

(b)     Declaring that Defendants violated the minimum wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs (including the prospective collective class members);

(c)     Declaring that Defendants violated the overtime wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs (including the prospective collective class members);

(d)     Declaring that Defendants violated the recordkeeping requirements of, and associated rules and regulations under, the FLSA with respect to Plaintiffs' (and the prospective collective class members') compensation, hours, wages, and any deductions or credits taken against wages;

(e)     Declaring that Defendants' violation of the provisions of the FLSA were willful as to Plaintiffs (including the prospective collective class members);

(f)     Awarding Plaintiffs (including the prospective collective class members) damages for the amount of unpaid minimum and overtime wages, and damages for any improper deductions or credits taken against wages under the FLSA as applicable;

(g)     Awarding Plaintiffs (including the prospective collective class members) liquidated

damages in an amount equal to 100% of their damages for the amount of unpaid minimum and overtime wages, and damages for any improper deductions or credits taken against wages under the FLSA as applicable pursuant to 29 U.S.C. § 216(b);

(h)     Declaring that Defendants violated the minimum wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

(i)     Declaring that Defendants violated the overtime wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

(j)     Declaring that Defendants violated the spread-of-hours requirements of the NYLL and supporting regulations;

(k)     Declaring that Defendants violated the notice and recordkeeping requirements of the NYLL with respect to Plaintiffs' compensation, hours, wages and any deductions or credits taken against wages;

(l)     Declaring that Defendants violated the tip withholding provisions of the New York Labor Law, with respect to Plaintiffs and the FLSA Class members';

(m)     Awarding Plaintiffs damages for the amount of unpaid minimum and overtime wages, and for any improper deductions or credits taken against wages, as well as awarding spread of hours pay under the NYLL as applicable;

(n)     Awarding Plaintiffs damages for Defendants' violation of the NYLL notice and recordkeeping provisions, pursuant to NYLL §§198(1-b), 198(1-d);

(o)     Awarding Plaintiffs liquidated damages in an amount equal to one hundred percent (100%) of the total amount of minimum wage, spread of hours pay and overtime compensation shown to be owed pursuant to NYLL § 663 as applicable; and liquidated damages pursuant to NYLL § 198(3);

(p)     Awarding Plaintiffs (including the prospective collective class members) pre-judgment and post-judgment interest as applicable;

(q)     Awarding Plaintiffs (including the prospective collective class members) the expenses incurred in this action, including costs and attorneys' fees;

(r)     Providing that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL § 198(4); and

(s)     All such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues triable by a jury.

Dated: New York, New York
       November 30, 2017

MICHAEL FAILLACE & ASSOCIATES, P.C.

By:     /s/ Michael Faillace
        Michael Faillace [MF-8436]
        60 East 42nd Street, Suite 4510
        New York, New York 10165
        Telephone: (212) 317-1200
        Facsimile: (212) 317-1620

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

November 2, 2017

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    Miguel Lopez Montes

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                    02 de noviembre de 2017

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

November 1, 2017

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff. **(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name/ Nombre:                              Jose Gerardo Carretero Gutierrez

Legal Representative/ Representante        Michael Faillace & Associates, P.C.
Legal:

Signature/ Firma:

Date/ Fecha:                               November 1, 2017

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510                                         Telephone: (212) 317-1200
New York, New York 10165                                         Facsimile: (212) 317-1620

_____

Faillace@employmentcompliance.com

November 2, 2017

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la
demanda como uno de los demandantes.)**

Name / Nombre:                         **Valentin Vivar Cruz**

Legal Representative / Abogado:        Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                          02 de noviembre de 2017

*Certified as a minority-owned business in the State of New York*