# Michael Faillace & Associates, P.C.

## Employment and Litigation Attorneys

60 E. 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

_____

jandrophy@faillacelaw.com

September 9, 2019

**VIA ECF**
Hon. Stewart D. Aaron
United States Magistrate Judge
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

Re:   Lopez Montes et al v. 11 Hanover Group LLC. et al;
      17-cv-09376-SDA

Dear Judge Aaron,

This firm represents the Plaintiffs Miguel Lopez Montes, Jose Gerardo Carretero Gutierrez, and Valentin Vivar Cruz in the above-referenced matter. Plaintiffs write jointly with Defendants to request that the Court approve the settlement agreement ("the Agreement") reached by the parties herein as "fair and reasonable." *Cheeks v. Freeport Pancake House, Inc.,* 796 F.3d 199 (2d Cir. 2015); *Wolinsky v. Scholastic, Inc.*, 900 F. Supp. 2d 332, 335-36 (S.D.N.Y. 2012). The Agreement is attached hereto as Exhibit A.

Plaintiffs have agreed to settle all of their claims in this action. Specifically, the parties and their counsel have considered that the interests of all concerned are best served by compromise, settlement and dismissal of these claims with prejudice, in exchange for consideration as set forth in the Agreement. The Agreement is the result of arms-length bargaining between the parties. The Agreement reflects a desire by the parties to fully and finally settle and compromise all of Plaintiffs' claims asserted in this case as outlined more specifically in the attached Agreement. The Agreement was reached at a mediation through the Court's mediation program.

*Certified as a minority-owned business in the State of New York*

September 9, 2019
Page 2

The parties have concluded that the Agreement is fair, reasonable, adequate, and in the parties' mutual best interests.  For these reasons and based on the reasons set forth below, the parties jointly and respectfully request that that Court enter an Order approving the settlement as fair and reasonable.

### I.    Statement of the Case

Plaintiffs contend that they were employed in various positions by Defendants, who ran a restaurant named 11 Hanover Greek located in lower Manhattan. The exact allegations for each Plaintiff as are follows.

**<u>Plaintiff Miguel Lopez Montes</u>**

Plaintiff Miguel Lopez Montes ("Plaintiff Lopez") worked for Defendants ostensibly as a food runner from approximately October 10, 2016 until on or about October 20, 2017.  From October 10, 2016 until in or about July 2017, Plaintiff Lopez typically worked 78 hours per week.  From July 2017 until in or about October 2017, Plaintiff Lopez typically worked 52 hours per week. During the month of October 2016, Defendants paid Plaintiff Lopez $9.00 per hour for all hours worked by check.  From approximately November 2016 until in or about October 2017, Defendants paid Plaintiff Lopez $7.50 per hour for all hours worked by check. Defendants did not provide Plaintiff Lopez with accurate wage statements with each payment of wages, as required by NYLL §195(3), nor did they provide him with a wage notice any time throughout his employment, as required by NYLL §195(1).  From approximately August 2017 until in or about October 2017, Defendants required Plaintiff Lopez to sign a document, the contents of which he was not given time to review, in order to release his weekly pay.

September 9, 2019
Page 3

**Plaintiff Jose Gerardo Carretero Gutierrez**

Plaintiff Jose Gerardo Carretero Gutierrez ("Plaintiff Carretero") worked for Defendants as a food preparer from approximately October 2016 until on or about October 27, 2017. From October 2016 until on or about October 27, 2017, Plaintiff Carretero typically worked 56 to 67 hours per week. Throughout his employment, Defendants paid Plaintiff Carretero a fixed salary of $850.00 per week; however, if Plaintiff Carretero worked five days per week, Defendants paid him a fixed salary of $708.00 per week. Defendants paid Plaintiff Carretero by personal check and did not provide him with accurate wage statements with each payment of wages, as required by NYLL §195(3), nor did they provide him with a wage notice any time throughout his employment, as required by NYLL §195(1). Throughout his employment, Defendants required Plaintiff Carretero to sign a document, the contents of which he was not given time to review, in order to release his weekly pay.

**Plaintiff Valentin Vivar Cruz**

Plaintiff Valentin Vivar Cruz ("Plaintiff Vivar") worked for Defendants as a food runner from approximately October 1, 2016 until on or about October 20, 2017. From October 1, 2016 until on or about October 9, 2016, Plaintiff Vivar worked 47 hours. From approximately October 10, 2016 until in or about November 2016, Plaintiff Vivar worked typically 70.5 hours per week. From approximately November 2016 until in or about June 2017, Plaintiff Vivar typically worked 63 hours per week. From approximately June 2017 until in or about September 2017, Plaintiff Vivar typically worked 46 to 48 hours per week. From approximately September 2017 until in or about October 2017, Plaintiff Vivar worked typically 51 hours per week. During the month of October 2016, Defendants paid Plaintiff Vivar $10.00 per hour. During the month

September 9, 2019
Page 4

of November 2016, Defendants paid Plaintiff Vivar $9.00 per hour. From approximately December 2016 until in or about August 2017, Defendants paid Plaintiff Vivar $7.50 per regular and overtime hour. From approximately September 2017 until in or about October 2017, Defendants paid Plaintiff Vivar $7.50 per regular hour and $11.00 per overtime hour. Defendants paid Plaintiff Vivar by check, except for October 1, 2016 through October 9, 2016, when Defendants paid Plaintiff Vivar in a combination of personal check and cash. Defendants did not provide him with accurate wage statements with each payment of wages, as required by NYLL §195(3), nor did they provide him with a wage notice any time throughout his employment, as required by NYLL §195(1). From approximately August 2017 until in or about October 2017, Defendants required Plaintiff Vivar to sign a document, the contents of which he was not given time to review, in order to release his weekly pay.

As such Plaintiffs alleged Defendants maintained a policy and practice of requiring the Plaintiffs to work in excess of forty hours per week without paying them the minimum and overtime compensation required by federal and state laws. Plaintiff asserted claims for violations of the minimum wage and overtime provisions of the Fair Labor Standards Act ("FLSA") and New York Labor Law("NYLL"), as well as under the spread of hours wage order of the New York Commissioner of Labor, N.Y. COMP. CODES R. & REGS. tit. 12, 146-1.6. Plaintiffs also asserted claims for violation of the NYLL provisions concerning notice and recordkeeping, and wage statements (NYLL §195(1), (3)).

Defendants denied the allegations. Defendants produced documents in discovery that cast doubt on certain allegations by plaintiffs of their wage rates. Defendants also contended that they were entitled to pay Plaintiffs at a tip credit wage rate.

September 9, 2019
Page 5

**II.    The Proposed Settlement is Fair and Reasonable**

Under the settlement, Defendants will pay $100,000 to settle all claims.  Of this amount, $33,772.84 will be applied attorney's fees and costs in this matter, with the remainder of $66,227.16 to be allocated to the Plaintiffs.

A court may approve a settlement where it "reflects a 'reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching.'"  *Le v. Sita Information Networking Computing USA, Inc.*, No. 07 Civ. 0086, 2008 U.S. Dist. LEXIS 46174 at *2 (E.D.N.Y. June 12, 2008) (quoting *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982)); *see also Kopera v. Home Depot U.S.A., Inc.*, No. 09 Civ. 8337, 2011 U.S. Dist. LEXIS 71816, at *2 (S.D.N.Y. June 24, 2011) ("If the proposed settlement reflects a reasonable compromise over contested issues, the settlement should be approved.").

Having conferred with Defendants in lengthy settlement negotiations, and prepared for a settlement conference with the Court, it became clear that they were sharply contested factual and legal disputes that went to the heart of Plaintiffs' claims. If the Court accepted Defendants' positions, Plaintiff's damages would have been reduced significantly.  Looked at as a whole, these contested issues suggested that settlement was a reasonable path forward for all parties in this action.

The Defendants also had limited ability to pay a settlement, and it would have been difficult to enforce a large judgment against Defendants and collect it in full.  Even if Plaintiffs were to obtain a judgment for the full amount of his claimed damages, it is not clear that they would have been able to collect the full amount, and any partial collection would have been

September 9, 2019
Page 6

time-consuming, and come only after completion of discovery, potential summary judgment motion practice, and trial. The proposed settlement represents a reasonable compromise between the strength of Plaintiffs' claims and Defendants' financial situation. In the event that Defendants default on the agreed-upon payment plan, Plaintiff is protected by a substantial confession of judgment of $200,000 less any payments made.

Plaintiffs' best scenario calculation was that they were owed $66,591.23 in minimum and overtime wages, and a total of approximately $224,000. Plaintiffs will receive approximately their unpaid minimum wage and overtime under the settlement. Plaintiffs will receive a little below 30% of their overall best-case scenario total damages. However, Plaintiffs are willing to accept a lower amount in settlement due to the concerns described above, as well as the delay involved in taking a case to trial.

Considering the risks in this case outlined above, discussed *supra*, Plaintiffs believe that this settlement is an excellent result for the Plaintiffs, and it should be approved as a fair settlement. *See Meigel v. Flowers of the World, NYC, Inc.,* 2012 U.S. Dist. LEXIS 2359, at *2-3 (S.D.N.Y. Jan. 9, 2012) ("Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement.").

In addition to the monetary provisions of the settlement, the Parties have agreed to mutual releases limited to the claims asserted in this action Defendants which is in accordance to the standards approved by Courts in this district. *See Lola v. Skadden*, 2016 U.S. Dist. LEXIS 12871 (S.D.N.Y. Feb. 3, 2016), *Sadana v. Park Li, Ltd.*, 2016 U.S. Dist. LEXIS 19122 (S.D.N.Y. Feb. 17, 2016).

September 9, 2019
Page 7

### III.    Plaintiffs' Attorneys' Fees are Fair and Reasonable

Under the settlement, and in accordance with their retainer agreements with the Plaintiffs, Plaintiffs' counsel will receive $33,772.84 from the settlement fund as attorneys' fees and costs. This represents one third of the settlement fund after costs are deducted, plus those costs, and constitutes a reduction from the forty percent retainer rate reflected in the Plaintiffs' retainer agreements.

We respectfully submit that the FLSA does not require the Court to review the attorneys' fees that a plaintiffs' attorney will receive out of a settlement.  *See Gutierrez v. 352 East 86ᵗʰ St. Rest., Inc.*, 15-cv-2064 (HBP), 2016 U.S. Dist. LEXIS 23967, *3-*4 (S.D.N.Y. Feb. 19, 2016) (declining to address the fee arrangement between plaintiff and his counsel because FLSA does not regulate relationship between attorney and plaintiff).  However, if the Court holds it is necessary to review Plaintiffs' attorneys' fees, such fees should be approved as fair and reasonable.

The amount provided to Plaintiffs' counsel under the settlement is fair and reasonable and well within the range of fees typically awarded in cases in this Circuit.  *See Hyun v. Ippudo USA Holdings*, 14-cv-8706 (AJN), 2016 U.S. Dist. LEXIS 39115, *7 (S.D.N.Y. March 24, 2016) ("Fee awards representing one third of the total recovery are common in this District") (quoting *Gaspar v. Pers. Touch Moving, Inc.*, No. 13-CV-8187 (AJN), 2015 U.S. Dist. LEXIS 162243, 2015 WL 7871036, at *2 (S.D.N.Y. Dec. 3, 2015)); *Calle v. Elite Specialty Coatings Plus, Inc.*, 2014 U.S. Dist. LEXIS 164069 at *9 (E.D.N.Y. Nov. 19, 2014) ("A one-third contingency fee is a commonly accepted fee in this Circuit."). In light of the nature of the issues herein, and the extensive negotiations necessary to reach the agreed-upon settlement, Plaintiffs' attorney

September 9, 2019
Page 8

requested award is reasonable. Additionally, everyone covered by this settlement has already agreed to the fee provided for in the settlement; this is not a collective or class action.

We respectfully submit that the Court should approve the one-third contingency fee award without requiring information about Plaintiffs' attorneys' lodestar amount, as such awards are customary and promote the alignment of interests that a contingency fee creates. If the Court requires a comparison to Plaintiffs' attorneys' lodestar amount, it should find that the attorneys' fees are reasonable. Plaintiffs' attorneys' lodestar amount is $8,215.00 in attorneys' fees and $660.00 in costs. Plaintiffs' attorneys' billing records are annexed hereto as Exhibit B. While the amount of attorneys' fees Plaintiffs' attorneys will receive under the agreement exceeds the lodestar amount, the one-third fee is justified. Plaintiffs' attorneys took substantial risk in bringing this action against the Defendant. Moreover, the settlement was reached after hard-fought negotiations by Plaintiffs' attorneys to get Plaintiffs the maximum settlement possible under the circumstances. Reducing the portion of the settlement agreement that may be apportioned to attorneys' fees would eliminate the significant incentive that a contingency fee arrangement provides to plaintiffs' attorneys to maximize the settlement. It would also incentivize plaintiffs' attorneys to engage in unnecessary work for the sake of increasing billed hours, even when that work would be unlikely to materially advance the case or lead to a greater recover for plaintiffs.

In particular, in this case the parties were able to reach a settlement agreement at a mediation before conducting depositions. Approving an allocation of one-third attorneys' fees which exceeds the lodestar incentivize plaintiffs' attorneys to litigate efficiently; in contrast, not approving such a fee allocation would reward attorneys who increase Court proceedings

September 9, 2019
Page 9

unnecessarily in order to justify fees, and also incentivize plaintiffs' attorneys not to engage in serious settlement discussions until all discovery is completed. These incentives would all be contrary to the goals of the Federal Rules of Civil Procedure in securing "the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1.

Given Plaintiffs' counsel's significant experience representing plaintiffs in the New York City in wage and hour litigation, Plaintiffs' counsel was able to obtain an excellent result with relatively low time and expense. A brief biography of each attorney who performed billed work in this matter is as follows:

    a.  Michael Faillace is the Managing Member of Michael Faillace & Associates, P.C, and has been in practice since 1983. From 1983 to 2000, he was in-house Employment Counsel with International Business Machines Corporation (IBM). Mr. Faillace taught employment discrimination as an Adjunct Professor at Fordham University School of Law since 1992 and at Seton Hall University Law School from 1995 to 1998, and is a nationally-renowned speaker and writer on employment law. He also is the author of the ADA, Disability Law Deskbook: The Americans with Disabilities Act in the Workplace, published by Practicing Law Institute (PLI), and other employment law publications and presentations. His work is billed at $450 per hour with the initials "MF."

    b.  Mr. Androphy is senior attorney at Michael Faillace & Associates, P.C. His time is billed at an hourly rate of $400.00 and is indicated by the initials "JA". This is his standard rate for matters on which his work is billed at an hourly rate. Androphy graduated from Columbia University School of Law in 2005, where he was a Harlan Fiske Stone Scholar and Managing Editor of the Columbia Journal of Law and Social Problems. Following law school, Androphy developed a broad background in litigation at Olshan Frome Wolosky LLP, where he practiced complex commercial litigation, employment litigation, securities litigation and contract litigation for seven years. At his departure from Olshan Frome Wolosky LLP, Mr. Androphy regularly billed at the rate of $450 per hour. Since joining Michael Faillace & Associates, P.C. in 2012, Androphy has been responsible for litigating all aspects of individual, collective, and class action employment claims in state and federal court. Androphy has been named a Super Lawyers Rising Star in 2014, 2015, 2016, 2017, and 2018 for employment litigation. He has served

September 9, 2019
Page 10

        as trial attorney on over twenty wage and hour trials in federal court since joining Michael Faillace & Associates, P.C.

    c.   Haleigh Amant is a former associate at Michael Faillace & Associates, P.C. Her time is billed at the rate of $250 per hour and indicated by the initials "HA." Since graduating law school in 2017 from the George Washington University Law school, she had been practicing strictly employment law and representing employees in wage and hour disputes.

    d.   Marsiol Santos is a former associate at Michael Faillace & Associates, P.C. her time is billed at the rate of $200 per hour and indicated by the initials "MS." Following law school, Snatos cultivated a specialization in employment law, serving as a wage & hour associate at an employment firm in Queens, New York for a year and a half prior to joining Michael Faillace & Associates, P.C. Since joining the undersigned firm in October 2016, Santos was responsible for all aspects of employment cases in federal court.

These rates are reasonable given the attorneys' experience in wage and hour matters, and the result achieved for Plaintiffs in this case. *See Najera v. 144 Ninth Gotham Pizza*, No. 12-cv-3133 (DLC), 2017 U.S. Dist. LEXIS 26393, *4, 2017 WL 728703 (S.D.N.Y. Feb. 24, 2017) (awarding Androphy's requested rate of $400 "given Mr. Androphy's exceptional performance in this litigation"); *Perez v. Platinum Plaza 400 Cleaners, Inc.,* Index No. 12-cv-9353 (PAC), 2015 U.S. Dist. LEXIS 78079, *3 n. 1 (S.D.N.Y. June 16, 2015) (awarding requested rates to Michael Faillace and Joshua Androphy, finding they had "demonstrated entitlement to these rates based on their experience in wage and hour litigation and their performance in this case").

While the portion of the settlement amount to be applied attorneys' fees is more than Plaintiffs' attorneys' lodestar amount, the amount is reasonably proportionate and represents a one-third contingency fee. Moreover, it is not clear that additional billed time by Plaintiffs' attorneys would have benefited Plaintiffs in obtaining a greater settlement. For the reasons explained herein, it was in Plaintiffs' interest to settle now rather than engage in additional discovery and other activities that would further delay resolution.

September 9, 2019
Page 11

Should Your Honor have any questions or concerns regarding this settlement, the parties are happy to address them. The parties thank the Court for its attention to this matter.

Respectfully submitted,

/s/Joshua S. Androphy
Joshua S. Androphy
MICHAEL FAILLACE & ASSOCIATES, P.C.
Attorneys for the Plaintiff

Enclosures